IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 29, 2013

**IN RE ASPYN S. J.**[1]

**Appeal from the Juvenile Court for Wayne County**
**No. 91-JV1-2010-JV-1     James Y. Ross, Judge**

**No. M2013-00855-COA-R3-PT - Filed August 27, 2013**

Mother challenges the decision of the trial court terminating her parental rights to her daughter, Aspyn S.J. We find clear and convincing evidence to support the trial court's determination that Mother abandoned her child by willfully failing to provide support and that termination of Mother's parental rights is in the best interest of the child.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Patrick S. Butler, for the appellant, Shonda P.

Robert E. Cooper, Attorney General and Reporter and Jordan Scott, Assistant Attorney General, for the appellee, Department of Children's Services.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Shonda P. ("Mother") is the mother of Aspyn S. J., a child born in February 2000. Aspyn's father is deceased. Aspyn and two of her siblings were taken into the custody of the Department of Children's Services ("DCS") in February 2010 pursuant to an agreed order

---

[1]This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

of dependency and neglect. The basis of the court's finding of dependency and neglect was "unsatisfactory living conditions." Aspyn was placed in a therapeutic foster home with her siblings, and Mother was permitted to have supervised visitation.

In March 2010, DCS developed a permanency plan for Aspyn with the goals of returning her to a parent or placing her with a relative. The plan required Mother, who was on probation for theft charges, to comply with the terms of probation and not obtain any new charges; complete a parenting assessment and follow the recommendations from the assessment; continue to search for appropriate housing and notify DCS to allow an inspection of the home to insure its safety; and have a legal means of income to support her family. Mother agreed to the terms of the permanency plan. A second permanency plan developed in December 2010 added the requirement that Mother obtain and maintain housing for at least six months. A third plan with similar requirements was implemented in May 2011. A fourth plan, developed in March 2012, also required Mother to maintain housing and employment for at least three months after she was released from jail and to identify relatives who might be able to provide a permanent placement for Aspyn.

On July 25, 2012, DCS filed a petition to terminate Mother's parental rights to Aspyn. The Department alleged the following grounds for termination: (1) abandonment by failure to visit pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1); (2) abandonment by failure to support pursuant to Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1); substantial noncompliance with permanency plan pursuant to Tenn. Code Ann. §§ 36-1-113(g)(2) and 37-2-403(a)(2); and persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3).

The case was heard on February 15, 2013, and the court heard testimony from the DCS case manager, Mother, and the child's maternal grandmother. In an order entered on April 3, 2013, the trial court found clear and convincing evidence to support all four grounds of termination; the court further found by clear and convincing evidence that termination was in the child's best interest. The court therefore terminated the parental rights of Mother with respect to Aspyn.

On appeal, Mother asserts that DCS failed to prove any of the grounds for termination alleged in the petition or to prove that termination was in the child's best interests.

STANDARD OF REVIEW

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a

compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Pursuant to Tenn. Code Ann. § 36-1-113(l)(1), "[a]n order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian."

Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654; *see In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *In re Taylor B.W.*, 397 S.W.3d at 112. We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the grounds necessary to terminate parental rights. *Id.*

ANALYSIS

*Abandonment*

One of the statutory grounds for termination of parental rights is abandonment. Tenn. Code Ann. § 36-1-113(g)(1). One of the definitions of abandonment for purposes of terminating parental rights is as follows:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(i). For purposes of this provision, "willfully failed to support" or "willfully failed to make reasonable payments toward the support of the child" means the willful failure to provide monetary support or to provide more than token payments toward the support of the child for a period of four consecutive months. Tenn. Code Ann. § 36-1-102(1)(D). "Token support" refers to support that, under the circumstances, is insignificant given the parent's means. Tenn. Code Ann. § 36-1-102(1)(B).

Willfulness is an essential element of a determination of abandonment in the context of parental termination. *In re M.L.P.*, 281 S.W.3d 387, 392 (Tenn. 2009); *In re C.T.B.*, No. M2009-00316-COA-R3-PT, 2009 WL 1939826, at *4 (Tenn. Ct. App. July 6, 2009). A person's failure to support a child is willful when that person is "aware of his or her duty of support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing support." *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). A parent who fails to support his or her child(ren) because the parent is financially unable to provide support is not willfully failing to provide support. *O'Daniel v. Messier*, 905 S.W.2d 182, 188-89 (Tenn. Ct. App. 1995).

For purposes of Tenn. Code Ann. § 36-1-102(1)(A)(i), the relevant time period for proof of abandonment is the four months preceding the filing of the petition, in this case the period from March 25, 2012 through July 25, 2012. Pursuant to an order entered on January 12, 2012, Mother was required to pay child support in the amount of $430.00 per month; half of this amount was designated for the support of Aspyn. At the hearing, Mother testified that she went to North Dakota in December 2011 and worked in an egg carton factory; she

returned to Tennessee in May 2012. The evidence does not preponderate against the trial court's finding that Mother "did not use any of her employment income for the benefit and support of her child." Mother testified that she "might have supplied some clothes" for the child during the relevant time period. The court found this to be "nothing more than nominal or token support."[2]

The evidence does not preponderate against the trial court's findings that Mother "knew of her obligation to support the child, was employed and was able to support the child, and did not support the child." Clear and convincing evidence supports the trial court's conclusion that Mother abandoned the child by her willful failure to provide support.

Rights may be terminated on the basis of one statutory ground. *In re D.L.B.*, 118 S.W.3d at 367 (Tenn. 2003).

### *Best interest*

Tennessee Code Annotated section 36-1-113(i) contains a non-exhaustive list of factors a trial court is required to consider in making the best interest determination. Every factor need not be applicable for the trial court to determine it is in the best interest of the child for a parent's rights to be terminated. *See In re Audrey S.*, 182 S.W.3d at 878. The best interest analysis is a fact-intensive inquiry requiring the court to consider the unique facts of the case "from the child's, rather than the parent's, perspective." *In re Giorgianna H.*, 205 S.W.3d 508, 523 (Tenn. Ct. App. 2006).

The trial court made detailed findings as to the statutory factors:

1. It is in the best interest of the child that [Mother's] parental rights be terminated because [Mother] has not made such an adjustment of her circumstances, conduct or conditions so as to make it safe and in the child's best interest to be in her home.
2. It is in the child's best interest for termination to be granted as to [Mother] because she has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible. Petitioner DCS has made reasonable efforts to assist [Mother] by facilitating visitation, even when the minor child was in the state of Georgia for intensive treatment for her various medical conditions. Petitioner DCS provided [Mother] with gasoline cards

---

[2]We need not consider income tax refund proceeds intercepted by the State of Tennessee because, as the trial court found, these funds were not applied to the support of Aspyn during the relevant time period.

and offered her personal transportation in order to assist her to visit with the child. Petitioner DCS allowed [Mother] to have telephone communications with the child, which were not utilized by [Mother]. The last positive thing that [Mother] [did] for the benefit or her child was completing the parenting assessment, which was arranged and paid for by Petitioner DCS. The reasonable efforts provided by Petitioner DCS could not prevent [Mother's] loss of housing and her automobile.

3. It is in the child's best interest for termination to be granted as to [Mother] because she has not maintained regular visitation or other contact with the child.

4. It is in the child's best interest for termination to be granted as to [Mother] because there is no meaningful relationship between her and the child. In the past, it appears [Mother] had a meaningful relationship with the child, but the Court is now skeptical that such a relationship exists given her failure to maintain regular visitation.

5. It is in the child's best interest for termination to be granted as to [Mother] because a change of caretakers and physical environment resulting in a return to [Mother] is likely to have a detrimental and/or negative effect on the child's emotional, psychological and medical condition. The child has suffered greatly because [Mother] has repeatedly violated the law and rules of probation resulting in her incarceration for significant periods of time throughout the child's life. As a result, [Mother] has left the child in the care of relatives and friends and placed in the custody of Petitioner DCS by the Court. [Mother] has failed to provide for the financial support and basic needs of the child and has been unable to keep and maintain a stable residence or source of income. There is no evidence that [Mother] has remedied the conditions that lead to the child's removal.

6. It is in the child's best interest for termination to be granted as to [Mother] because the physical environment of [Mother's] home is unhealthy or unsafe for the child. [Mother] is currently incarcerated and has been incarcerated since August 6, 2012. Prior to her present incarceration, [Mother] engaged in criminal conduct that would have created an unhealthy and unsafe environment for the child if she had been in [Mother's] home.

7. It is in the child's best interest for termination to be granted as to [Mother] because there is criminal activity in her home. [Mother] has previously tested positive for drugs while on probation and has been incarcerated multiple times throughout the child's life. She is currently incarcerated in the Giles County jail and serving a three year sentence for violating the terms of her probation. [Mother] has been placed on probation after pleading guilty to felony theft of property valued between $10,000.00 and $60,000.00.

8.  It is in the child's best interest for termination to be granted as to [Mother] because [Mother] has not paid child support as established pursuant to the child support guidelines promulgated by the Department of Human Services pursuant to Tenn. Code Ann. § 36-5-101.  The Court finds that she has paid no child support toward the care and maintenance of the child as required pursuant to the Order Setting Support issued on January 12, 2012.

9.  It is in the child's best interest for termination to be granted as to [Mother] because she has shown little or no interest in the welfare of the child.  The Court finds that [Mother] has failed to avail herself of the services offered by Petitioner DCS, has willfully failed to visit and willfully failed to support the child, thereby demonstrating lack of interest for the child's welfare.

In asserting that the trial court erred in concluding that termination of Mother's parental rights was in the child's best interest, Mother argues that DCS offered no medical evidence regarding the child's psychological needs and that, given the chance, she "would follow any advice or recommendations of medical experts."  In light of all of the evidence presented, however, and the detailed findings of the trial court, we find clear and convincing evidence that termination of Mother's parental rights is in the child's best interest.

CONCLUSION

For the reasons discussed above, we affirm the trial court's decision.  Costs of appeal are assessed against the appellant, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE